UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARANTZAZÚ ZUZENE GALDÓS-SHAPIRO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | C.A. No. 3:24-cv-30070-MGM |
| | ) | |
| THE TOWN OF GREAT BARRINGTON, | ) | **LEAVE TO FILE IN EXCESS** |
| PAUL E. STORTI, JOSEPH O'BRIEN, | ) | **GRANTED ON 8/28/2024 [Dkt. No. 14]** |
| and PETER DILLION, | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

The defendants, TOWN OF GREAT BARRINGTON (the "Town"), PAUL E. STORTI ("Chief Storti") and JOSEPH O'BRIEN ("Officer O'Brien," and with the Town and Chief Storti, collectively the "GB Defendants"), submit this memorandum of law in support of their Motion to Dismiss. The GB Defendants move to dismiss each of the counts of the First Amended Complaint ("Amended Complaint") for failure to state claims upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

## RELEVANT PROCEDURAL HISTORY

On May 14, 2024, the plaintiff, Arantzazú Zuzene Galdós-Shapiro ("Galdós-Shapiro" or the "plaintiff"), filed her complaint in this Court. (Dkt. No. 1).  The GB Defendants agreed to accept service, copies of which were filed on June 3, 2024, setting a deadline for this response on July 22, 2024.  (Dkt. Nos. 7-9).  Thereafter, the parties filed a joint motion to extend the deadline to respond to the Complaint, which was allowed by the Court. (Dkt. Nos. 10 and 12).

On August 29, 2024, the plaintiff filed the Amended Complaint. (Dkt. No. 16).  The plaintiff's Amended Complaint appears to omit the Berkshire Hills Regional School District (the "District") as a party and the claim for violation of 42 U.S.C. § 1983 – Fifth Amendment.  The Amended

Complaint now consists of the following claims: (I) Violation of 42 U.S.C. § 1983 – First Amendment against all defendants; (II) Violation of 42 U.S.C. § 1983 – Fourth Amendment against all defendants; (III) Violation of 42 U.S.C. § 1983 – Equal Protection Clause of the Fourteenth Amendment against all defendants; (IV) Violation of G.L. c. 12, §§ 11H, 11I and Articles I and XIV of the Massachusetts Declaration of Rights against all defendants; and (V) Conspiracy against all defendants.

## GENERAL FACTUAL BACKGROUND

Solely for the purposes of the instant motion, the GB Defendants accept as true the facts as distinguished from conclusory allegations as set forth therein.  Indeed, the Amended Complaint is replete with editorialization and unsupported speculation rather than factual allegations.  This action arises out of a report to the Town's police department ("GBPD") by a complaining party (the "Complainant") on December 8, 2023. (¶ 30).[1]  The Complainant reported to Officer O'Brien allegations against the plaintiff of disseminating obscene or pornographic material to minors, allowing students to sit on the plaintiff's lap and meeting with students in private and telling the students not to tell their parents about it at the District's Dubois Regional Middle School (the "Middle School").[2] (¶ 30; Exhibit 2). This prompted a brief investigation whereby Chief Storti, after being contacted by Officer O'Brien, engaged with the Superintendent of Schools for the District, the defendant Peter Dillon ("Dr. Dillon").  Neither Dr. Dillon nor the Middle School principal, Miles Wheat ("Principal Wheat"), were aware of the allegations.  As such, it was arranged for Officer O'Brien to go to Middle School after the students were released.  (¶¶ 39, 48). While there, Officer O'Brien spoke with Principal Wheat about the allegations, and then met with Principal Wheat and the plaintiff in a classroom.  After about seven minutes, Officer O'Brien left the classroom and the

---

[1] For brevity, all citations to the Complaint shall be stated as "(¶ ___)."
[2] The District is a stand-alone, regional school district and is not a department of the Town.

plaintiff.  No charges were brought against the plaintiff.  (¶¶ 48-60).

The GB Defendants also refer to and incorporate the exhibits to the Amended Complaint, as well as the video, which is referenced in the Amended Complaint and publicly available at https://youtu.be/PGXuH6E1CXk (the "Video").  To the extent that there are discrepancies between the Video and the allegations of the Amended Complaint, however, the Video should control.  As grounds therefor, the case of Baker v. City of Madison, Alabama, 67 F.4th 1268 (11th Cir. 2023), is instructive.  There, the Eleventh Circuit affirmed the use of officers' body camera footage for purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) without converting the motion into one for summary judgment.  The Court found that "the requirements of the incorporation-by-reference doctrine are easily satisfied" as the plaintiff had referenced the footage in his complaint and the footage depicted the events that are central to the plaintiff's claims. Id. at 1277.  Here, the Video provides an audio and visual recording of the incident that is the basis, in part, of the plaintiff's claims.  Further, the Eleventh Circuit ruled that "where a video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account, see Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010), and view the facts in the light depicted by the video, see Scott v. Harris, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). After all, courts are not required to rely on 'visible fiction.' Scott, 550 U.S. at 380-81, 127 S. Ct. At 1776." Id. at 1277-1278; see also Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013) ("when an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

On July 15, 2024, counsel for the plaintiff and the GB Defendants conferred pursuant to Local Rule 7.1.  During the conference, the plaintiff's counsel did not object to the fact that the GB Defendants did not have any knowledge about the Complainant and any prior history as set forth in the Amended Complaint.  (¶¶ 3, 30, 32-39).  It appears that the allegations relating to this were

revised in the Amended Complaint. (Compare Dkt. No. 1 at ¶ 3 with No. 16 at ¶ 3).  The plaintiff's counsel also did not object to the representation that the plaintiff was the first person to publicize this incident.

## I.    <u>STANDARD OF REVIEW.</u>

The standard of review for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires that the Court determine that a plaintiff's allegations state a claim on which relief can be granted. See, e.g., <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007); <u>Derin v. Stavros Ctr. for Indep. Living, Inc.</u>, 581 F. Supp. 3d 351, 354 (D. Mass. 2022). When presented with a motion to dismiss for failure to state a claim, a court must accept all well-pleaded allegations as true and grant the plaintiff the benefit of all reasonable inferences. <u>Ezra Charitable Trust v. Tyco Intern., Ltd.</u>, 466 F.3d 1, 5-6 (1st Cir. 2006)<u>; see also Rogan v. Menino</u>, 175 F.3d 75, 77 (1st Cir. 1999) (noting that courts "should stop short, however, of swallow[ing] the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited") (internal quotations omitted). If a complaint states a plausible claim for relief on its face, it will survive a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678. A court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Id.</u> Whether a complaint asserts a plausible claim is thus fact specific, and all legal conclusions made must be supported by factual allegations. <u>Id.</u>

## II.    <u>COUNTS I, II AND III: THE CLAIMS ALLEGING VIOLATIONS OF 42 U.S.C. § 1983 SHOULD BE DISMISSED.</u>

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994)

(quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n.3 (1979)).

**A.  <u>As to Individuals</u>.**

"To state a claim under Section 1983, a plaintiff must show [1] that the challenged conduct was committed by a person acting under color of state law and [2] that the conduct worked a deprivation of rights, privileges, or immunities secured by the Constitution or federal law." <u>Diaz v. Devlin</u>, 229 F. Supp. 3d 101, 109 (D. Mass. 2017) (citing 42 U.S.C. § 1983; <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997)).

Further, to the extent that the plaintiff attempts to assert a Section 1983 claim against either officer in his official capacity, any such claim must fail as well. "[O]fficial–capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>McGuigan v. Conte</u>, 629 F. Supp. 2d 76, 82 (D. Mass. 2009) (quoting <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991)). Accordingly, an official capacity claim against Chief Storti or Officer O'Brien constitutes another way of asserting a Section 1983 claim against the Town, which is addressed below.

Here, for purposes of this motion, it is not disputed that Chief Storti and Officer O'Brien are state actors being sued for actions taken pursuant to their official duties. To the extent that these counts assert claims alleged in their official capacity, they must be dismissed. Further, unless noted, the arguments below apply to both Chief Storti and Officer O'Brien.

**1.  <u>COUNT I: The Plaintiff's Claims Based On A Violation Of Rights Under The First Amendment Should Be Dismissed</u>.**

The basis of the plaintiff' claim in Count I is that she was "investigated … as a result of the allegation that she had the book *Gender Queer* in her classroom." (¶ 84; see also ¶¶ 87, 89).

First, a civil rights violation based on the First Amendment is redundant of the plaintiff's Fourth Amendment claim. <u>Gutierrez v. Massachusetts Bay Transp. Auth.</u>, 437 Mass. 396, 410 (2002); see

also <u>Pagan v. Calderon</u>, 448 F.3d 16 (1st Cir. 2006).  Here, there was justification for the interaction that occurred between Officer O'Brien and the plaintiff.  The reasons for the interaction between the plaintiff and the officer are addressed in Section II.A.2, <u>infra</u>.

Second, to the extent that the plaintiff is asserting a claim for supervisory liability against Chief Storti, no such allegations exist to support such a claim.  See <u>Pineda v. Toomey</u>, 533 F.3d 50, 54 (1st Cir.2008) (noting that a supervisor may be liable under Section 1983 if (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference); see also <u>Saldivar v. Pridgen</u>, 91 F. Supp. 3d 134, 137 (D. Mass. 2015), <u>aff'd sub nom.</u> <u>Saldivar v. Racine</u>, 818 F.3d 14 (1st Cir. 2016).

Regardless, the fact that an investigation occurred is not a violation of the plaintiff's First Amendment rights.  "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out." <u>Hartman v. Moore</u>, 547 U.S. 250, 256 (2006); see also <u>Perry v. Sindermann</u>, 408 U.S. 593, 597 (1972) (noting that the government may not punish a person or deprive him or her of a benefit on the basis of his or her "constitutionally protected speech").  While it is unclear the exact theory of liability being asserted by the plaintiff, "[u]nder the First Amendment, retaliation claims proceed in two stages. A plaintiff must first prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action. The defendant may then avoid a finding of liability by showing that it would have reached the same decision even in the absence of the protected conduct." <u>D.B. ex rel. Elizabeth B. v. Esposito</u>, 675 F.3d 26, 43 (1st Cir. 2012).

Here, the plaintiff has not alleged facts sufficient to state a claim.

Cases have consistently held that issues of First Amendment rights in the classroom often fall within the discretion and judgment of local and state government officials, and that "Section 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees." Wood v. Strickland, 420 U.S. 308, 326 (1975), abrogated on other grounds, Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982); see also Griswold v. Driscoll, 616 F.3d 53, 58 (1st Cir. 2010) (Souter, J., sitting by designation) (citations omitted) (emphasis added) ("That states and local school boards are generally afforded considerable discretion in operating public schools" and that federal courts "do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not *directly and sharply* implicate basic constitutional values.").

In Massachusetts, and relevant to this matter, there are statutes that define obscene materials and provide for protections when they appear in the educational environment.  See, e.g., M.G.L. c. 272, § 28.  The Amended Complaint, however, is devoid of any facts that the response to the Complainant's allegations and the conduct of Chief Storti or Officer O'Brien were based on any constitutionally protected speech. See Delaney v. Town of Abington, 890 F.3d 1, 6 (1st Cir. 2018) (holding that a "causal connection between the alleged retaliatory action and the protected expression" is required); see also Hartman v. Moore, 547 U.S. 250, 259-260 (2006) (stating that section 1983 "plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action" and that "causation is understood to be but-for causation, without which the adverse action would not have been taken"); Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994) (applying but-for causation and noting plaintiff does not need to show "that the defendant's *sole* motive was to chill the plaintiff's protected expression").

The investigation that occurred on December 8, 2023 – in the context of *all* of the allegations reported by the Complainant to Officer O'Brien – did not amount to any deprivation of the plaintiff's

First Amendment rights.  There were allegations in addition to the presence of a book that necessitated and demanded some sort of further inquiry, especially where the school officials did not have an immediate response to the allegations of disseminating obscene or pornographic material to minors, allowing students to sit on the plaintiff's lap and meeting with students in private and telling the students not to tell their parents about it. (¶ 29; Exhibit 2).  With respect to the book, M.G.L. c. 272, § 28, does not provide an absolute defense to all materials in the classroom.  See Commonwealth v. Mienkowski, 91 Mass. App. Ct. 668, 674 (2017) (concluding that the constraints in M.G.L. c. 272, § 28, will not "cause persons whose expression is constitutionally protected to refrain from exercising their rights").  The mere inquiry into the book, along with the inquiries into the other concerns, does not amount to any sort of a constitutional deprivation and, as the Amended Complaint acknowledges, no further action was taken by the GB Defendants that would support a cause of action under Section 1983. (¶ 60).

And finally, the plaintiff has not set forth any facts that she suffered an adverse action, that the alleged protected conduct was a substantial or motivating factor or that the defendant would not have acted differently under the circumstances.  Again, this was a brief investigation into allegations involving children at a school.  The allegations from the Complainant focused on the plaintiff and her classroom.  The interaction between the plaintiff and Officer O'Brien was extremely short, and resulted in no other action by the GB Defendants.

As such, based on the allegations of the Amended Complaint, the plaintiff has not set forth a viable claim under § 1983.

## 2. **COUNT II: The Plaintiff's Claims Based On A Violation Of Rights Under The Fourth Amendment Should Be Dismissed.**

The Fourth Amendment guarantees the right "to be secure ... against unreasonable searches and seizures."  The plaintiff alleges that "Defendants never had any cause, let alone probable cause

or reasonable suspicion, to detain Ms. Galdós-Shapiro, interrogate her, or to search her classroom." (¶ at 93).  The plaintiff has failed to state a claim for any violation of her Fourth Amendment rights.

Preliminarily, the plaintiff does not allege any facts that would support liability as to Chief Storti. See <u>Pineda</u>, 533 F.3d at 54. Regardless, the arguments would apply to both Chief Storti and Officer O'Brien.

> (a) *The Plaintiff Has Not Alleged An Unlawful Search*.

In order to detain or search a person, the action must be based on "a reasonable suspicion, based on specific, articulable facts and reasonable inferences, that the defendant had committed, was committing, or was about to commit a crime." <u>Commonwealth v. Willis</u>, 415 Mass. 814, 817 (1993); see also <u>Commonwealth v. Deramo</u>, 436 Mass. 40, 42 (2002). Because it is a "less demanding" standard, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." <u>Alabama v. White</u>, 496 U.S. 325, 330 (1990). The standard "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." <u>Navarette v. California</u>, 572 U.S. 393, 402 (2014) (internal quotations omitted).

Here, there was a report of the potential distribution of obscene materials and inappropriate contact with a minor.  This was not by an anonymous source, but by a person who wanted to maintain confidentiality yet made his report directly and in person to the police.  This certainly amounts to reasonable suspicion to make an inquiry, especially when viewing the scope of the inquiry involved here.  See <u>Com. v. Gomes</u>, 75 Mass. App. Ct. 791, 794 (2009), <u>aff'd,</u> 458 Mass. 1017 (2010) (noting that "[r]easonable suspicion depends upon both the content of the information possessed and its degree of reliability," and that "[t]ips from informants must be evaluated by reference to their reliability and the probable basis of knowledge of the informant") (internal citations omitted).

Further, the plaintiff herself was not searched in any way.  The focus of this claim is the search of the classroom.  Any claim asserting that a search of the plaintiff's classroom constitutes a deprivation of her constitutional rights should fail as a matter of law. "A search within the meaning of the Fourth Amendment occurs whenever the government intrudes upon any place and in relation to any item in which a person has a reasonable expectation of privacy." United States v. Moss, 936 F.3d 52, 58 (1st Cir. 2019); see United States v. Bain, 874 F.3d 1, 12 (1st Cir. 2017); see also United States v. Stokes, 829 F.3d 47, 51 (1st Cir. 2016).  In the school setting, "'probable cause' is not an irreducible requirement of a valid search. The fundamental command of the Fourth Amendment is that searches and seizures be reasonable, and although 'both the concept of probable cause and the requirement of a warrant bear on the reasonableness of a search, ... in certain limited circumstances neither is required.'"  New Jersey v. T.L.O., 469 U.S. 325, 340-341 (1985) (quoting Almeida-Sanchez v. United States, 413 U.S. 266, 277 (1973) (Powell, J., concurring)). "Thus, we have in a number of cases recognized the legality of searches and seizures based on suspicions that, although 'reasonable,' do not rise to the level of probable cause." Id. Here, the plaintiff did not have a reasonable expectation of privacy in the items in her classroom, especially since they were all in the public space and in public view.  Further, it is not reasonable to have an expectation of privacy for items and materials maintained in a classroom.  See Garrity v. John Hancock Mut. Life Ins. Co., No. CIV.A. 00-12143-RWZ, 2002 WL 974676, at *1 (D. Mass. May 7, 2002) (noting that "the relevant inquiry is whether the expectation of privacy was reasonable" and that there was no such expectation in work emails); see also Khachatourian v. Hacienda La Puente Unified Sch. Dist., 572 F. App'x 556, 558 (9th Cir. 2014) (holding that a teacher did not have a reasonable expectation of privacy in his classroom and thus use of a dog to sniff around his classroom did not violate his Fourth Amendment rights).

Also, Principal Wheat had actual or apparent authority to consent to any search. One well-settled exception is where valid consent is obtained by the government. See Davis v. United States, 328 U.S. 582, 593-594 (1946); Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Consent exists where "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). "[A]n individual can consent to an intrusion that affects another's constitutionally protected interests without overstepping the bounds of the Fourth Amendment. Thus, for example, when two persons share common authority over premises or effects, one party's consent legitimates a warrantless search even if the search is aimed at ferreting out evidence of the other party's malefactions." United States v. Woodrum, 202 F.3d 1, 10 (1st Cir. 2000) (citing Matlock, 415 U.S. at 171). "Common authority is, of course, not to be implied from the mere property interest a third party has in the property, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, 415 U.S. at 171 n.7; see also United States v. Marshall, 348 F.3d 281, 285 (1st Cir. 2003) ("An officer's reliance on a person's apparent authority must be judged against an objective standard: whether a person of reasonable caution with the facts available to him or her would believe the consenting party had authority over the premises."). Here, Principal Wheat had the authority – or at very least the apparent authority – to authorize or consent to a search of the classroom. The officer is working within the confines of the consent given to him by Principal Wheat, or the apparent consent given to the officer. A school principal, after all, is the person in charge of a school building. See M.G.L. c. 71, § 59B ("Principals employed under this section shall be the educational administrators and managers of their schools and shall supervise the operation

and management of their schools and school property, subject to the supervision and direction of the superintendent.").  The Amended Complaint clearly states and infers that Wheat provided permission to Officer O'Brien to enter the classroom and speak with the plaintiff. (¶¶ 48, 50, 52).

Finally, there is nothing alleged in the Amended Complaint or in the Video to support the premise or to reasonably infer that Officer O'Brien exceeded the scope of the plain view doctrine. "The plain view doctrine is an exception to the Fourth Amendment's warrant requirement that 'permits the warrantless seizure of an item if the officer is lawfully present in a position from which the item is clearly visible, there is probable cause to seize the item, and the officer has a lawful right of access to the item itself.'"  United States v. Sweeney, 2023 WL 4628178, at *2 (D. Mass. July 19, 2023) (quoting United States v. Hernandez-Mieses, 931 F.3d 134, 140 (1st Cir. 2019) (quoting United States v. Gamache, 792 F.3d 194, 199 (1st Cir. 2015))). Here, having been invited into the school, it is reasonable to infer that Principal Wheat had authority to authorize any search of the classroom and therefore Officer O'Brien was lawfully present in the classroom.  Officer O'Brien's viewing of the classroom falls within the scope of the plain view doctrine and there is nothing alleged or shown in the Video that exceeds it.  As such, the analysis must end there because nothing was seized and, therefore, there was no deprivation.

(b) *The Plaintiff Was Not Seized*.

A number of factors are relevant to determining whether a person is in custody for Fourth Amendment purposes.[3] See, e.g., United States v. Hughes, 640 F.3d 428, 434-436 (1st Cir. 2011).  Factors include where the questioning occurred, the number of law enforcement officers present

---

[3] To the extent that this claim somehow asserts the plaintiff was not afforded certain protections under Miranda, no such claim exists under Section 1983 and the plaintiff has already abandoned her claim for violation of her Fifth Amendment Rights.  See Vega v. Tekoh, 597 U.S. 134, 141-142, 150-151 (2022).  "In sum, a violation of Miranda does not necessarily constitute a violation of the Constitution, and therefore such a violation does not constitute 'the deprivation of [a] right ... secured by the Constitution.'" Id. at 150.

during questioning, the degree of physical restraint, and the duration and character of the interrogation. Id. at 435.  "The question is whether, viewed objectively, those circumstances constitute the requisite 'restraint on freedom of movement of the degree associated with a formal arrest.'" United States v. Hinkley, 803 F.3d 85, 90 (1st Cir. 2015) (quoting Hughes, 640 F.3d at 435). In Hinkley, the Court found that the plaintiff was not in custody. Id. at 90.  Although he was at the police station, he was never restrained, he was interviewed by one police officer, and was informed within the beginning of the interview that he was free to leave. Id. The tone of the officer was "generally one of frustration, not anger or aggression." Id.

In the instant action, the interaction occurred at the plaintiff's place of employment – a regional public school building – and in her own classroom.  The entire interaction lasts less than ten minutes. Only one officer, Officer O'Brien, participated in the interaction and the tone was conversational. The officer was in plain clothes. (¶ 48). Principal Wheat spoke with the plaintiff before Officer O'Brien spoke with her.  (¶¶ 48-50).  Principal Wheat was present for the interaction between Officer O'Brien and the plaintiff.  (¶¶ 50-58).  The plaintiff was not told that she has been implicated in any crime nor was she questioned about the allegations relating to the children sitting on her lap or instructing them not to tell their parents.  (¶ 48; see Video).  For purposes of this motion only, the plaintiff has alleged that the door to the classroom was closed, ¶ 50, but given all of the other circumstances, that did not create a restrictive environment.  See Oregon v. Mathiason, 429 U.S. 492 (1977) (finding that an interrogation in a police station, with the door closed, did not constitute being in custody); see also Locke v. Cattell, 476 F.3d 46, 52 (1st Cir. 2007) (collecting cases regarding statements to persons being questioned without transforming same into a custodial situation). As shown in the Video, the plaintiff was free to move about the classroom and she was not restricted in any way that would support, objectively, a finding that she was restricted to the degree of a formal arrest.  See United States v. Monson, 72 F.4th 1, 10-13 (1st Cir.), cert. denied,

144 S. Ct. 367, 217 L. Ed. 2d 196 (2023) (analyzing facts and concluding that the individual was not subjected to a custodial interrogation, even if the individual was never told they were free to leave).

Based on the foregoing, the plaintiff has not alleged any violation of her Fourth Amendment rights.

### 3. <u>COUNT III: The Plaintiff's Claims Based On A Violation Of Rights Under The Fourteenth Amendment Should Be Dismissed</u>.

The Equal Protection Clause of the Fourteenth Amendment generally provides that similarly situated persons are entitled to receive similar treatment at the hands of government actors. See <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).

Preliminarily, because the plaintiff alleges a violation of her rights under the First and Fourth Amendments, she cannot also maintain a claim under the equal protection clause to the extent there is overlap between this claim and the other two bases. See <u>Pagan</u>, 448 F.3d at 36 ("To the extent that a plaintiff challenging a discretionary decision to deny a benefit claims to be entitled to redress based on allegations of unconstitutional political discrimination or retaliation, he cannot rely on the Equal Protection Clause but, rather, must bring his claim under the specific provisions of the First Amendment.").

Assuming that her claim can proceed, to state an equal protection claim, a plaintiff must show that she "was treated differently from others similarly situated ... based on impermissible considerations." <u>Clark v. Boscher</u>, 514 F.3d 107, 114 (1st Cir. 2008) (citation and quotation marks omitted). The Supreme Court has held that differential treatment based on suspect classifications (race, national origin, religion, or alienage) is subject to strict scrutiny; differential treatment based on quasi-suspect classifications (gender or illegitimacy) is subject to intermediate scrutiny; and differential treatment based on all other classifications must simply survive a rational-basis inquiry.

See <u>Clark v. Jeter</u>, 486 U.S. 456, 461 (1988) (collecting cases). In addition, a plaintiff must plead sufficient facts such that it is plausible that a defendant acted with discriminatory intent. See <u>Hayden v. Grayson</u>, 134 F.3d 449, 453 (1st Cir. 1998) ("[U]nless these plaintiffs established the requisite discriminatory intent, their equal protection claim cannot succeed....").

To the extent that the plaintiff does not allege that he was treated differently based on a *protected* characteristic, her equal protection claim is most appropriately analyzed as a so-called class-of-one claim.[4] See, e.g., <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Middleboro Veterans' Outreach Ctr. Inc. v. Provencher</u>, 502 Fed.Appx. 8, 10 (1st Cir. 2013) (unpublished). "To plead a 'class-of one' claim, [Plaintiff] must allege facts to establish that he was intentionally treated differently from others who were similarly situated without a rational basis and that the difference was 'due to malicious or bad faith intent on the part of the defendants to injure him.'" <u>Pollard v. Georgetown Sch. Dist.</u>, 132 F. Supp. 3d 208, 223 (D. Mass. 2015) (quoting <u>Priolo v. Town of Kingston</u>, 839 F. Supp. 2d 454, 460 (D. Mass. 2012) (quoting <u>Walsh v. Town of Lakeville</u>, 431 F. Supp. 2d 134, 145 (D. Mass. 2006) (internal quotation marks omitted))); see also <u>Allen v. Town of E. Longmeadow</u>, 2018 WL 1152098, at *4 (D. Mass. Feb. 9, 2018), <u>report and recommendation adopted,</u> 2018 WL 1141361 (D. Mass. Mar. 2, 2018).

Class-of-one claims require an extremely high degree of similarity between a plaintiff and the individual(s) to whom she compares herself. See <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 38 (1st Cir. 2013); <u>Pollard</u>, 132 F. Supp. 3d at 223. Thus, a plaintiff must "identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled … out for unlawful oppression." <u>Buchanan v. Maine</u>, 469 F.3d 158, 178 (1st Cir. (2006) (emphasis in original).

---

[4] The plaintiff's counsel stated that they were pursuing this claim under both theories.

Regardless of her theory of liability, the plaintiff fails to state a claim for a violation of her constitutional right to equal protection against either Officer O'Brien or Chief Storti because she has failed to identify any other person who was similarly situated to her and was treated differently by either of these defendants regardless of the standard of inquiry accorded to the protected class. See, e.g., Allen, 2018 WL 1152098, at *6. "As we have explained, '[e]xact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.'" Davis v. Coakley, 802 F.3d 128, 133 (1st Cir. 2015) (quoting Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 8 (1st Cir.2001)). "Plaintiff's failure to offer more than a bald allegation that she was treated differently than other similarly situated individuals is fatal to this claim." Id. (citing Pollard, 132 F. Supp. 3d at 223 (dismissing equal protection claim based on plaintiff's "failure to plead factual allegations about [plaintiff's] similarity to other students and the [defendant's] differential treatment")); see also Back Beach Neighbors Comm., 63 F.4th 126, 132 (1st Cir. 2023) (affirming dismissal of class of one equal protection claim where plaintiff did not plausibly allege the existence of similarly situated comparators); Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 (1st Cir. 2013) (affirming dismissal of class-of-one equal protection claim where complaint identified single comparator but made no effort to establish why the comparator was similarly situated to the plaintiff and did not mention any other putative comparator); Schofield v. Clarke, 769 F. Supp. 2d 42, 48 (D. Mass. 2011) (dismissing equal protection claim where the plaintiff "fail[ed] to set forth any facts showing that he was treated differently from others who were similarly situated").

Further, as shown in the Video, the allegation that the officer singled out the plaintiff is contradicted by the Video. In the Video, the officer is heard inquiring about who else may know the book's location and if the plaintiff knows what teacher may have the book. The plaintiff also could not identify who had signed out the book. (¶ 105; Video at 1:30-1:42, 3:42-4:17, 6:30-7:40).

The Amended Complaint is simply devoid of any facts that would support a claim based on a violation of the plaintiff's Fourteenth Amendment rights.

### 4. Chief Storti And Officer O'Brien Are Entitled To Qualified Immunity As To All Claims Pursuant To Section 1983.

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is determined according to a two-part test. Pearson v. Callahan, 555 U.S. 223 (2009); Maldonado v. Fontanes, 568 F.3d 263, 268-269 (1st Cir. 2009). Under Pearson and Maldonado, the relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. Pearson, 555 U.S. at 224; Maldonado, 568 F.3d at 269. Although conducting this two-step analysis in sequence is sometimes advisable because doing so "promote[s] the development of constitutional precedent," courts have discretion to avoid the direct constitutional question when a matter may be resolved at the second step. Maldonado, 568 F.3d at 269-270. "The second prong, in turn, has two elements: 'We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right.'" Id. (quoting Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir. 2011)).

In this instance, the Complainant came to the police station and reported that a teacher was showing obscene materials to minors and engaging in potentially inappropriate touching and also telling the children not to inform their parents. A police department is bound to investigate allegations of criminal conduct, especially involving children. Officer O'Brien reported the

allegations to Chief Storti, who then came into the station and had multiple calls with Dr. Dillon. At no point did the school officials inform Officer O'Brien or Chief Storti that they were aware of alleged book or any other allegations relating to this teacher, nor did they inform Officer O'Brien or Chief Storti not to investigate the allegations. To the contrary, the school officials agreed to have Officer O'Brien go to the school, meet with Principal Wheat and speak to the teacher – the plaintiff – and try to locate the book. No official standing in the shoes of Chief Storti or Officer O'Brien would have understood that the actions taken were a violation of any of the plaintiff's rights identified in this Amended Complaint or that in this particular factual context of this case, that they would have understood that their conduct was violating this plaintiff's rights.

This is also not a case where the plaintiff was arrested or charged in any way. The plaintiff's claim is based on the fact that there was a police investigation, however brief, into the Complainant's allegations. The response of Chief Storti and Officer O'Brien was extremely measured: they engaged with the school officials immediately; they consulted with the District Attorney's Office; they did not make any arrests; they did not apply for any charges; and ultimately, they facilitated communications between the school and the District Attorney's Office. These acts do not constitute any sort of constitutional deprivation, and they should certainly be protected by qualified immunity. See Fraser v. Massachusetts Bay Transportation Auth., 544 F. Supp. 3d 148, 159–60 (D. Mass. 2021) ("The qualified-immunity doctrine does not demand perfection; it permits a degree of latitude to make mistakes or misjudgments.").

### B. As to the Town.

Because a municipality cannot be held vicariously liable for the conduct of its officials or employees under Section 1983, a plaintiff's civil rights claim against a municipality is governed by the familiar analysis of Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658 (1976). "Under Section 1983, it is well established that a municipality is not liable for the actions of its

employees simply by virtue of the employment relationship." <u>Freeman v. Town of Hudson</u>, 849 F. Supp. 2d 138, 149 (D. Mass. 2012); see also <u>Marrero-Rodriguez v. Municipality of San Juan</u>, 677 F.3d 497, 503 (1st Cir. 2012) ("Nor may the Municipality be sued under § 1983, as pled, on a *respondeat superior* theory that it is liable because it employs the individual defendants."); <u>Allen v. Town of E. Longmeadow</u>, No. 17-CV-30041-MGM, 2018 WL 1152098, at \*11 (D. Mass. Feb. 9, 2018), <u>report and recommendation adopted,</u> No. 17-CV-30041-MGM, 2018 WL 1141361 (D. Mass. Mar. 2, 2018) (dismissing Section 1983 claim against a municipality).

Thus, in order to prevail under Section 1983 against the Town, the plaintiff must demonstrate that her harm was caused by a constitutional violation and that the Town was responsible for such violation. See <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115, 121 (1992). In so doing, a plaintiff bears the burden of showing that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." <u>Board of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 404 (1997) (emphasis in original) (quoting <u>Monell</u>, 436 U.S. at 694). To support a claim of municipal liability against the Town in this case, the plaintiff must show that the Town adopted an unconstitutional policy and that such policy resulted in her harm. See <u>Bowen v. City of Manchester</u>, 966 F.2d 13, 18 (1st Cir. 1992); <u>Smith v. City of Boston</u>, 413 Mass. 607, 610 (1992) (citing <u>Monell</u>, 436 U.S. at 690). Alternatively, in the absence of formal government action, municipal liability may be imposed if the plaintiff's rights were violated by the existence of a widespread custom or practice that, although not authorized by law or express government policy, was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167-68 (1970)).

Further, where there is no constitutional injury, there can be no liability against the Town. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no

constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); <u>Kennedy v. Town Of Billerica</u>, 617 F.3d 520, 532 (1st Cir. 2010) ("<u>Monell</u> can impose municipal liability only for underlying, identifiable constitutional violations ...."); <u>Lachance v. Town of Charlton</u>, 990 F.3d 14, 31 (1st Cir. 2021) (same).

To the extent that the Court finds no constitutional injury or deprivation in the preceding sections, the claims against the Town must be dismissed.

The Amended Complaint is also devoid of any allegations – conclusory or otherwise – of any Town policy, practice or custom that would trigger liability under <u>Monell</u>.  Indeed, the only allegation regarding a Town policy, practice or custom appears in Paragraph 32 where the plaintiff alleges that Officer O'Brien departed from usual and acceptable police practice.  That allegation, however, has no bearing on any liability under <u>Monell</u>.

The Amended Complaint is also devoid of allegations of any pattern of similar constitutional (or statutory) violations that could form a basis of municipal liability, including other, similar incidents or a failure to train. See <u>Leclair v. Mass. Bay Transp. Auth.</u>, 2018 WL 314813, at *6 (D. Mass. Jan. 5, 2018) (granting motion to dismiss § 1983 claim where the plaintiff did not allege that the defendant was aware of incidents similar to the incident about which plaintiff complained). In "limited circumstances," a municipality may also be held liable under Section 1983 for inadequate training. See <u>Young v. City of Providence</u>, 404 F.3d 4, 26 (1st Cir. 2005). To recover, a plaintiff must identify a specific deficiency in training that is "closely related" to the ultimate injury. <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). Again, the plaintiff alleges no such deficiency against the Town.

Based on the foregoing, the plaintiff cannot prove that that the Town acted in a manner that can create liability to the plaintiff.

III.    **COUNT IV: THE CLAIM FOR MASSACHUSETTS CIVIL RIGHTS ACT, M.G.L. c. 12, § 11H & I, SHOULD BE DISMISSED.**

The Massachusetts Civil Rights Act (the "MCRA") provides that "[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, … may institute and prosecute in his own name and on his own behalf a civil action…." M.G.L. c. 12, § 11I.  The MCRA is the state analog to § 1983 and provides a cause of action for an individual whose rights under the Constitution or laws of either the United States or the Commonwealth of Massachusetts have been interfered with by "threats, intimidation or coercion." See M.G.L. c. 12, §§ 11H and 11I; D'Ambrosio v. City of Methuen, Massachusetts, 2019 WL 1438050, at *14 (D. Mass. Mar. 31, 2019).  For purposes of this motion, the MCRA, however, does not provide any substantive rights, rather, it is a means to redress interference with rights that are granted by other state or federal laws. See Hobson v. The McLean Hospital Corp., 402 Mass. 413, 418 n.6 (1988).  In order to recover under M.G.L. c. 12, § 11I, plaintiffs must show "(1) [their] exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) were interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" Murphy v. Town of Duxbury, 40 Mass. App. Ct. 513, 518 (1996) (quoting Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 564 (1995)).  The SJC has recognized that in enacting the MCRA, "the Legislature did not intend to create 'a vast constitutional tort,' and thus explicitly limited the Civil Rights Act's remedy to situations where the derogation of secured rights occurs by threats, intimidation or coercion." Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989) (quoting Bell v. Mazza, 394 Mass. 176, 182–183 (1985)).  In applying this law, Massachusetts courts employ an objective, reasonable person standard in determining whether a defendant's conduct amounts to "threats,

intimidation, or coercion."  See <u>Glovsky v. Roche Bros. Supermarkets</u>, 469 Mass. 752, 763 (2014).

A claim under the MCRA is properly dismissed when the allegations in the complaint fail to satisfy

this standard.  See <u>id.</u> (citing <u>Brum v. Dartmouth</u>, 428 Mass. 684, 708 (1999)).

To the extent that the allegations simply allege a direct deprivation of rights, such claims do not

support one under the MCRA. See <u>Longval v. Comm'r of Correction</u>, 404 Mass. 325, 333 (1989)

("Not every violation of law is a violation of the [MCRA].  A direct violation of a person's right

does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act.");

<u>id.</u> at 333-334 (noting that direct violation of person's rights does not by itself involve coercion;

even unlawful conduct lacks this quality when all it does is take someone's rights away directly);

<u>Currier v. Nat'l Bd. of Med. Examiners</u>, 462 Mass. 1, 13 (2012) ("[T]he direct violation of a right

by itself is not the equivalent of [threats, intimidation or] coercion.").  Further, a plaintiff cannot

rely on lawful actions to support a claim for violation of the MCRA.  In <u>Sena v. Commonwealth</u>,

417 Mass. 250 (1994), where the Supreme Judicial Court was addressing the use of threats by a

police officer to obtain a warrant, the Court concluded that "*threatening a 'plaintiff['s] arrest*

*through lawful means ... is not actionable under § 11I.*'" <u>Id.</u> at 263 (emphasis added).

"[T]he Supreme Judicial Court of Massachusetts [the "SJC"] has held that MCRA claims are

subject to the same standard of immunity for police officers that is used for claims asserted under §

1983." <u>Raiche v. Pietroski</u>, 623 F.3d 30, 40 (1st Cir. 2010). Therefore, the qualified immunity

analysis applies equally to the plaintiff's claims under Section 1983 and their claims under the

MCRA. See <u>MacFarlane v. Town of E. Bridgewater</u>, 110 F. Supp. 3d 310, 322 (D. Mass. 2015).

Here, the plaintiff has alleged claims against the GB Defendants for violation of the MCRA by

using threats, intimidation and coercion against her rights under Articles I[5] and XIV[6] of the Massachusetts Declaration of rights and the First, Fourth and Fourteenth Amendments.  (¶ 109; see also ¶¶ 111-112).

1. **The Claims Against the Town and Chief Storti and Officer O'Brien in Their Official Capacities Must Be Dismissed.**

The Town must be dismissed because a municipality is not a "person" covered by the MCRA. See <u>Howcroft v. Peabody</u>, 51 Mass. App. Ct. 573, 575-576 (2001); see also <u>Maraj v. Massachusetts</u>, 836 F.Supp.2d 17, 30 (D. Mass. 2011) ("Plaintiff's MCRA claims ... against the individual officers in their official capacities, fail on the threshold ground that the Commonwealth and its agencies cannot be sued under the MCRA."); <u>Santiago v. Keyes</u>, 890 F. Supp. 2d 149, 157 (D. Mass. 2012) (same).  Storti and O'Brien must also be dismissed in their official capacities and to the extent that there are no allegations of any conduct outside of their official capacities.

2. **The Plaintiff Has Failed To Allege Any Deprivation of Rights or Threats, Intimidation or Coercion.**

For the reasons set forth in Section II, the plaintiff has failed to alleged that she was deprived of any rights protected by the MCRA.  Moreover, the plaintiff's claims under the MCRA are merely a recitation of her claims under Section 1983.  The claims under Section 1983 are for direct deprivations and, therefore, are not actions protected by the MCRA.  See <u>Longval</u>, 404 Mass. at 333.  Without greater clarity, this kitchen-sink pleading leaves the parties guessing as to what rights are alleged to have been directly deprived by the GB Defendants versus what rights the plaintiff alleges that she was deprived of by way of threats, intimidation or coercion.  More specifically, the

---

[5] Article I provides that "[a]ll people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

[6] Article XIV provides that "[e]very subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."

plaintiff's claims are based on Articles I and XIV of the Declaration of Rights and the First, Fourth and Fourteenth Amendments.  The plaintiff has failed to articulate what each defendant did in order to cause the plaintiff to give up which right.  See, e.g., Goddard v. Kelley, 629 F.Supp.2d 115, 128-129 (D. Mass. 2009).

Civil rights deprivations *and* threats must be distinguished from civil rights deprivations caused *by* threats, intimidate or coercion.  Only the latter will support recovery under MCRA. See Orwat v. Maloney, 360 F.Supp.2d 146, 165 (D. Mass. 2005); Columbus v. Biggio, 76 F.Supp.2d 43, 54 (D. Mass. 1999). "Threat" is defined as "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474, cert. den., 513 U.S. 868 (1994). "Intimidation" involves "putting [another] in fear for the purpose of compelling or deterring conduct."  Id. "Coercion" is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Stated differently, "coercion" is the active domination of another's will, or the use of physical, economic or moral force to compel another to act or assent, or to refrain from acting or assenting.  Id. Here, the Amended Complaint is devoid of any conduct that could constitute a threat, intimidation or coercion.

Further, it is settled law that *lawful* actions are not actionable under the MCRA.  See Sena v. Commonwealth, 417 Mass. 250, 263 (1994)) ("*However, threatening a 'plaintiff['s] arrest through lawful means ... is not actionable under § 111.*'" (emphasis added)); see also Finamore v. Miglionico, No. 4:17-CV-40122-DHH, 2020 WL 5100763, at *4 (D. Mass. June 24, 2020), aff'd, 15 F.4th 52 (1st Cir. 2021) ("Given the court's conclusion that probable cause supported the disturbing the peace charge, Finamore's § 1983 false arrest claim fails in toto.").  Here, the ability to investigate the Complainant's allegations was lawful and, therefore, cannot serve as a basis for liability under the MCRA.

### 3. **The Officers Are Entitled to Qualified Immunity**.

For the reasons set forth in the prior section regarding Section 1983, the officers are entitled to qualified immunity as to the claims pursuant to the MCRA. See <u>MacFarlane</u>, 110 F. Supp. 3d 310 at 322.

## IV. **THE CLAIM FOR CIVIL CONSPIRACY SHOULD BE DISMISSED.**

Massachusetts law recognizes two varieties of common law civil conspiracy: those involving "coercion" and those akin to the theory of common law joint liability in tort.  In order to state a claim of first type of civil conspiracy, a plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." <u>Jurgens v. Abraham</u>, 616 F.Supp. 1381, 1386 (D. Mass. 1985) (quotations omitted) (citing <u>Fleming v. Dane</u>, 304 Mass. 46 (1939)); see also <u>Aetna Cas. Sur. Co. v. P & B Autobody</u>, 43 F.3d 1546, 1563 (1st Cir. 1994). "Coercion" -- that is, where "the wrong was in the particular combination of the defendants rather than in the tortious nature of the underlying conduct." <u>Kurker v. Hill</u>, 44 Mass. App. Ct. 184, 188 (1998).

To state a claim for the second type of conspiracy, a plaintiff must allege "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." <u>Aetna Cas. Sur. Co. v. P & B Autobody</u>, 43 F.3d 1546, 1564 (1st Cir. 1994).

It appears that the plaintiff is asserting a claim pursuant to the second type as she alleges that "[t]he Defendants' conduct … was facilitated by and carried out by Defendants joining together and agreeing to inflict unconstitutional injury and took overt actions in furtherance of that goal." (¶ 116).

### A. **The Claim Against The Town Must Be Dismissed As Should  The Claims Against Chief Storti And Officer O'Brien In Their Official Capacities.**

Claims in tort are governed by the Massachusetts Tort Claims Act, M.G.L. c. 258 <u>et seq</u>. (the

"MTCA").  The MTCA bars this claim as to the Town because it is not liable for "any claim arising out of an intentional tort...." M.G.L. c. 258, § 10(c).  Section 10(c) enumerates several intentional torts and while conspiracy is not among them, the list is not exclusive. In <u>Connerty v Metropolitan District Comm'n.</u>, 398 Mass. 140 (1986), the SJC wrote that "[w]e construe the language of § 10(c) as excluding *all* intentional torts from the coverage of the [MTCA]. The use of the word 'including' in § 10(c) indicates that the enumeration of intentional torts in the section is not an all-inclusive list." <u>Id.</u> at 149, n. 8 (emphasis in original).  In <u>Wentworth Precious Metals, LLC v. City of Everett</u>, 2013 WL 441094 (D. Mass. Feb. 4, 2013), the Court dismissed a claim for civil conspiracy, writing that "[u]nder Massachusetts law, the City is to immune claims of conspiracy." <u>Id.</u> at *14 (citing M.G.L 258 § 10(c); see also <u>Leatham v. Donell</u>, 1996 WL 1251390, at *2 (Mass. Super. Aug. 09, 1996) (holding that M.G.L. c. 258, § 10(c), does not specifically enumerate conspiracy, but still contemplates such claims "by the language of § 10(c) in that the essence of a civil conspiracy claim is the intent to act in concert with another to the detriment of a third party").

Also, under the MTCA, an individual can only be sued for an intentional tort in his individual as opposed to the defendant's official capacity.  See M.G.L. c. 258, § 10(c) (barring claim against public employer for intentional trespass); <u>Howcroft</u>, 51 Mass. App. Ct. at 596 (intentional tort claims against individual defendants in their official capacities properly dismissed); <u>Saxonis v. Lynn</u>, 62 Mass. App. Ct. 916, 918 (2004) (same).

**B.** **The Claims Against Chief Storti and Officer O'Brien Should Be Dismissed On The Merits.**

Here, the plaintiff's claim fails for either theory, but it appears that the plaintiff is asserting a claim pursuant to the second type as she alleges that "[t]he Defendants' conduct … was facilitated by and carried out by Defendants joining together and agreeing to inflict unconstitutional injury…."

(¶ 119).[7]  The plaintiff, however, has not alleged facts sufficient to infer that any combination of the defendants agreed to act together with the express purpose of injuring her.  See Harnois v. Univ. of Massachusetts at Dartmouth, 2019 WL 5551743, at *14 (D. Mass. Oct. 28, 2019).  To the contrary, this was simply a response to the Complainant's report.

## V.    CHIEF STORTI AND OFFICER O'BRIEN ARE ENTITLED TO COMMON LAW IMMUNITY.

The SJC has held that, "[a]t common law, … a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption." Nelson v. Salem State College, 446 Mass. 525, 537 (2006).  Here, the allegations do not rise to the level of conduct needed to negate this immunity as to the state law claims against the individual defendants.

## CONCLUSION

For the reasons set forth above, the GB Defendants hereby request this Honorable Court to allow their Motion to Dismiss, with prejudice, as to all counts in the Amended Complaint.

---

[7] As to the first theory, the defendants did not have "some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." Jurgens, 616 F.Supp. at 1386.  To the contrary, each of the defendants have the power to investigate such allegations whether as crimes or as misconduct within the school building.  Each could have acted independently.

Respectfully submitted,

The Defendants,
TOWN OF GREAT BARRINGTON,
PAUL E. STORTI, and JOSEPH O'BRIEN

By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

_/s/ Jeffrey J. Trapani_
Jeffrey J. Trapani, Esq., BBO No. 661094
10 Post Office Square, Suite 1100N
Boston, MA  02109
(617) 350-0950
jtrapani@piercedavis.com

Dated: September 12, 2024

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered** participants on September 12, 2024.

**

_/s/ Jeffrey J. Trapani_
Jeffrey J. Trapani, Esq.