UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ARANTZAZÚ ZUZENE GALDÓS-SHAPIRO | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:24-cv-30070 |
| | ) | |
| v. | ) | |
| | ) | **LEAVE TO FILE GRANTED ON** |
| | ) | **DECEMBER 6, 2024** |
| THE TOWN OF GREAT BARRINGTON, | ) | |
| PAUL E. STORTI, JOSEPH O'BRIEN, | ) | |
| and PETER DILLON, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ARANTZAZÚ ZUZENE GALDÓS-SHAPIRO'S SUR-REPLY IN OPPOSITION TO DEFENDANT PETER DILLON'S MOTION TO DISMISS**

ARANTZAZÚ ZUZENE GALDÓS-SHAPIRO

By her attorneys,

Howard M. Cooper (BBO# 543842)
*hcooper@toddweld.com*
Maria T. Davis (BBO # 675447)
*mdavis@toddweld.com*
Benjamin J. Wish (BBO # 672743)
*bwish@toddweld.com*
Shayne N. Lotito (BBO# 711888)
*slotito@toddweld.com*
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777

Dated: January 3, 2025

## i. <u>INTRODUCTION</u>

The Defendants[1] assaulted Ms. Galdós-Shapiro's security in herself—physically, emotionally, and with regard to her foundational civil rights—because she had the temerity to express her own identity in relation to a matter of public concern: gender identity. Nothing in Dr. Dillon's Reply changes that reality. The Reply does not seek to suggest that there was any potential crime at all, including based on everything Dr. Dillon knew. It does not try to rebuff the truth that *Gender Queer* is an award-winning, critically-acclaimed work. And it does not suggest that Ms. Galdós-Shapiro, a queer Mexican-American woman, is anything other than a highly vulnerable individual. It fails to provide any justification for this Court to shuck off Ms. Galdós-Shapiro's claims.

### I.     <u>The Amended Complaint Makes All the Necessary Factual Allegations.</u>

Rather than confront Ms. Galdós-Shapiro's arguments, because he cannot capably do so, Dr. Dillon leads his reply brief by parsing the allegations of the Amended Complaint. He does so in a bid at arguing that Ms. Galdós-Shapiro's allegations are insufficient. He fails, as set out below. Dr. Dillon's furious attempts to slice the onion of the Amended Complaint into invisible wisps is nevertheless helpful. It reflects that Dr. Dillon knows that all his legal arguments are even weaker than his jabs at the facts.

A review of the Amended Complaint quickly reveals that Dr. Dillon's summary of the allegations of the Amended Complaint is wrong:

- Dr. Dillon notes that the Amended Complaint alleges that Ms. Galdós-Shapiro did not make the award-winning book "Gender Queer" available "generally" while the opposition does not use that word. This is a distinction without a difference: the point, as

---

[1] All defined terms have the same meaning as in Plaintiff's Opposition to Defendant Peter Dillon's Motion to Dismiss.

Ms. Galdós-Shapiro's legal argument makes clear, is that she did not offer up the book as part of the regular school curriculum.

- Dr. Dillon improperly claims that the description of Chief Storti bringing Dr. Dillon into the investigation and his agreement with the GBPD's approach is untethered from the allegations of the Amended Complaint. These arguments reflect an apparent decision to ignore the actual allegations, which set out Dr. Dillon's deep involvement. The Amended Complaint sets out that Dr. Dillon "aided and abetted and conspired with [Chief Storti] and Officer O'Brien to deprive Ms. Galdós-Shapiro of her rights by facilitating Officer O'Brien's unlawful search and interrogation . . . . " AC ¶3. Even more directly, the Amended Complaint spells out that Chief Storti and the other Defendants and "with the help of Dr. Dillon" pursued a criminal investigation of Ms. Galdós-Shapiro (such that Dr. Dillon obviously agreed). Id. ¶39. In particular, and among other things, "Dr. Dillon agreed with Chief Storti's plan to ambush Ms. Galdós-Shapiro and to search her classroom for the book Chief Storti determined, without any reasonable basis, to be 'obscene.'" Id. ¶43. These are just a few examples of many.

- Dr. Dillon even goes so far as to quibble that alleging that the janitor "several months later" berated "another female Hispanic Teacher" is not "shortly" as the Opposition states.

## II. Nothing About Ms. Galdós-Shapiro's Speech is Within the Scope of her Duties and Responsibilities, so It Is Protected Speech.

Dr. Dillon does not claim, because he cannot, that Ms. Galdós-Shapiro made the at-issue speech pursuant to any duties or responsibilities of her employment. He does not and cannot argue that *Gender Queer* was part of the school curriculum, fell within the ambit of Ms. Galdós-Shapiro's narrow, administrative duties as GSA advisor, or other teaching responsibilities. That

is dispositive on Ms. Galdós-Shapiro's free speech claim, which survives: she spoke as a citizen on a matter of public concern.

Dr. Dillon's misapprehension of Ms. Galdós-Shapiro's First Amendment arguments is nonetheless startling. He is quite right that she does not argue that the speech at issue "merely concerns [her] duties." Reply, at 4 (quoting Lane v. Franks, 573 U.S. 238, 239 (2014)). Rather, Ms. Galdós-Shapiro explains that her speech is protected because it does not concern her duties ***at all***. Indeed, as even Dr. Dillon concedes, as he must, her decision to maintain *Gender Queer* was "voluntary." Memorandum of Lasw in Support of Motion to Dismiss ("Mem."), at 5.  As the Amended Complaint alleges, Ms. Galdós-Shapiro "elected to place her own, personal copy of *Gender Queer* in her classroom . . . in order to, among other things, express her own personal views on a critically important, and sometimes volatile, issue: gender identity." AC ¶23. Ms. Galdós-Shapiro's role as GSA advisor imposed on her no duties or responsibilities to place *Gender Queer* in her classroom; her role was exclusively administrative and related solely to providing a "space and opportunity" for the GSA to meet. Id. Dr. Dillon does not suggest that Ms. Galdós-Shapiro's duties as a teacher and GSA advisor transforms that speech into a duty of her role.

Dr. Dillon's analysis of Garcetti and Lane is wrong for all the reasons set out in Ms. Galdós-Shapiro's Opposition to his Motion to Dismiss, but in any event is of no moment. No matter how one elects to read those cases, none of them say that an employee's speech unrelated to their employment lacks free speech protections: "[C]itizens do not surrender their First Amendment rights by accepting public employment." Lane, 573 U.S. at 231 (citing Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois, 391 U.S. 563, 568 (1968)).

III.    **Ms. Galdós-Shapiro's Speech Caused Dr. Dillon's Retaliatory Actions.**

There was just one reason that Dr. Dillon (i) directed the police to search Ms. Galdós-Shapiro's classroom for *Gender Queer* without a warrant; (ii) coordinated with the police to ensure that Ms. Galdós-Shapiro did not know of the search, including by instructing Principal Wheat not to apprise Ms. Galdós-Shapiro of the impending search; and (iii) broadcasted the District's mischaracterization of *Gender Queer* and Ms. Galdós-Shapiro's role to the public. AC ¶¶47, 61–62. Ms. Galdós-Shapiro had *Gender Queer* in her classroom.

Dr. Dillon's summary assertion that the Amended Complaint does not support an inference of causation gets him nowhere. Despite knowing that Ms. Galdós-Shapiro had not committed any crime, Dr. Dillon agreed with and assisted the GBPD with their investigation into *Gender Queer*. AC ¶¶3, 39, 43. Pretending that those allegations do not exist does not make them disappear.

Dr. Dillon's reliance upon Salmon v. Lang is surprising. See 57 F.4th 296, 312 (1st Cir. 2022). The First Circuit in that case found that there was insufficient evidence of causation (at summary judgment, not at the motion to dismiss stage) where the defendants never "expressed any hint of resentment or agitation towards [plaintiff]" and "there is no evidence" that the speech was even considered in connection with the adverse employment actions. Id. Here, obviously, the at-issue speech was integral to the adverse employment actions and Dr. Dillon ***agreed*** with the tactics of the police.

IV.    **Ignoring the Allegations against Dr. Dillon Does Not Allow Him to Dispose of the Fourth Amendment Count.**

The Amended Complaint lays out in chapter and verse the many ways in which Dr. Dillon caused the search and seizure of Ms. Galdós-Shapiro, including as set out above, *see supra* Part I. The mere fact that Dr. Dillon was not physically present is irrelevant. In the single

trial court decision upon which Dr. Dillon seeks to rely, the defendant was not personally involved at all, and the plaintiff did not claim otherwise. <u>Hayes v. Town of Uxbridge</u>, No. CIV.A. 13-40102-TSH, 2014 WL 1874745, at *5 (D. Mass. May 8, 2014). In other words, that case has nothing to do with Ms. Galdós-Shapiro's claims against Dr. Dillon.

V.    <u>**Ms. Galdós-Shapiro Will Shortly Be Adding Tort Claims Underlying the Civil Conspiracy Count.**</u>

While Dr. Dillon is right that the Amended Complaint does not contain tort claims underlying the civil conspiracy count, that is so only because of presentment requirements. Ms. Galdós-Shapiro is preparing her motion for leave to amend the complaint to add those counts, and the Court can appropriately consider those claims in that context.

## iv. <u>CONCLUSION</u>

For the above-stated reasons, the Court should deny the Motion in its entirety.

Respectfully submitted,

ARANTZAZÚ ZUZENE GALDÓS-SHAPIRO

By her attorneys,

/s/ Howard M. Cooper
Howard M. Cooper (BBO# 543842)
hcooper@toddweld.com
Maria T. Davis (BBO# 675447)
mdavis@toddweld.com
Benjamin J. Wish (BBO# 672743)
bwish@toddweld.com
Shayne N. Lotito (BBO# 711888)
slotito@toddweld.com
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777

Dated: January 3, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Howard M. Cooper, hereby certify that this document has been filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ Howard M. Cooper*_____

Howard M. Cooper