UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARANTZAZÚ ZUZENE GALDÓS-SHAPIRO,  ) <br>     Plaintiff, ) <br> ) <br> Vs. ) <br> ) <br> THE TOWN OF GREAT BARRINGTON, ) <br> PAUL E. STORTI, JOSEPH O'BRIEN, ) <br> and PETER DILLION, ) <br>     Defendants. ) | C.A. No. 3:24-cv-30070-MGM |

**OPPOSITION OF THE DEFENDANTS, TOWN OF GREAT BARRINGTON, PAUL E. STORTI AND JOSEPH O'BRIEN, TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

The defendants, TOWN OF GREAT BARRINGTON (the "Town"), PAUL E. STORTI ("Chief Storti") and JOSEPH O'BRIEN ("Officer O'Brien," and with the Town and Chief Storti, collectively the "GB Defendants"), hereby submit this memorandum in opposition to the Plaintiff's Motion for Leave to Amend Complaint (the "Motion to Amend") [ECF 38]. As grounds therefor, and more specifically set forth herein, the new claims for Defamation and Intentional Infliction of Emotional Distress ("IIED") set forth in the Motion to Amend are futile.

**I.  RELEVANT PROCEDURAL HISTORY**

On May 14, 2024, the plaintiff, Arantzazú Zuzene Galdós-Shapiro ("Galdós-Shapiro" or the "Plaintiff"), filed her complaint in this Court. [ECF 1]. The GB Defendants agreed to accept service, copies of which were filed on June 3, 2024, setting a deadline for this response on July 22, 2024. [ECF 7-9]. Thereafter, the parties filed a joint motion to extend the deadline to respond to the Complaint, which was allowed by the Court. [ECF 10 and 12].

On August 29, 2024, Plaintiff filed her *first* Amended Complaint. [ECF 16]. The Amended Complaint omitted the Berkshire Hills Regional School District (the "District") as a party and the claim for violation of 42 U.S.C. § 1983 – Fifth Amendment. The Amended Complaint asserted

the following claims: (I) Violation of 42 U.S.C. § 1983 – First Amendment against all defendants; (II) Violation of 42 U.S.C. § 1983 – Fourth Amendment against all defendants; (III) Violation of 42 U.S.C. § 1983 – Equal Protection Clause of the Fourteenth Amendment against all defendants; (IV) Violation of G.L. c. 12, §§ 11H, 11I ("MCRA") and Articles I and XIV of the Massachusetts Declaration of Rights against all defendants; and (V) Conspiracy against all defendants.

On November 25, 2024, the Plaintiff filed her opposition to the GB Defendants' Motion to Dismiss. In her opposition, Plaintiff represented that "she intends to move this Court to amend her Amended Complaint to assert those tort claims." [ECF 27 at pp. 30].

On January 13, 2025, the Court scheduled a hearing on the Motions to Dismiss for March 5, 2025. [ECF 36]. On February 27, 2025, the Plaintiff's counsel stated they were planning to file a Motion to Amend and, after being prompted, providing a draft pleading. On February 28, 2025, the undersigned spoke with Plaintiff's counsel about the proposed claims. On March 3, 2025, the Court cancelled the hearing. [ECF 37]. On March 31, 2025, the Court rescheduled the hearing for April 11, 2025.

On April 7, 2025, Plaintiff filed this Motion to Amend, seeking to add claims for IIED (Count VI) and Defamation (Count VII) against Officer O'Brien and Chief Storti. The proposed Second Amended Complaint also removes the Town from Count IV and Count V.[1]

## II.    ALLEGED FACTS

The GB Defendants refer to and incorporate their recitation of the general factual background as set forth in their Memorandum of Law in Support of Their Motion to Dismiss. [ECF 18 at pp. 2-4]. The GB Defendants reserve the right to dispute the facts alleged by Plaintiff in her Complaint, as amended, and her proposed Second Amended Complaint; however, the factual

---

[1] At the hearing on April 11, 2025, Plaintiff's Counsel acknowledged the removal of the Town for these counts.

allegations (but not Plaintiff's conclusions) are presumed true solely for the purposes of this Motion. See e.g., Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (discussing standard of review on Motion to Dismiss).

Additional allegations relevant to this claim are the following:

- That Officer O'Brien prepared the narrative attached to the Second Amended Complaint as Exhibit 2. [ECF 38-1 at pp. 45-48]. The photographs obtained from the Complainant by Officer O'Brien are attached as Exhibit 3. [ECF 38-1 at pp. 50-52].

- That GBPD's investigation gained public attention and was reported in the Berkshire Eagle, Boston Globe and CNN. [ECF 38-1 at ¶ 64].

- That GBPD released an unredacted form of the narrative that contained Plaintiff's name, home address and date of birth. [ECF 38-1 at ¶¶ 4, 66, 125]

- That the GBPD issued a statement on December 16, 2023, that stated:

  On December 8, 2023 The Great Barrington Police Department received a complaint from a person who witnessed what they perceived to be concerning illustrations in a book that was provided to students by a teacher at W.E.B. Dubois Middle School. The illustration provided by the witness depicted animated characters performing sexual acts on each other. Because this complaint was made directly to the police department, we are obligated and have a duty to examine the complaint further. Thanks to our established relationship with the school, we were able to carefully work together to investigate this situation. This involved immediate notification of the Superintendent and Principal of the middle school. Because we were only provided a single image of the illustration, it was important to identify and examine the material that was reported to us. Working together, it was decided that the department would send an officer toward the end of the day in plain cloths to be escorted to the classroom and to see if the book containing the illustration could be located. After a brief conversation with the teacher, the officer was advised that the book in question was not there and could not be accounted for at that time. The officer advised the principal and teacher, that we were not there to investigate the subject matter of any books. As a procedure in sensitive or complex investigations, the police notified the District Attorney's Office. Once the necessary information was gathered, it was determined that it is a matter to be managed within the Berkshire Hills Regional School District. The Great Barrington Police Department is dedicated to the safety of all people, especially children, and we take all complaints seriously.

  [ECF 38-1 at ¶¶ 68-69, 70-71; ECF 38-1, Exhibit 9 at pp. 67-68].

- That "this false narrative … continues to circulate through the media" in reports by WGBH, Boston Globe and CNN in reports dated December 18, 2023, December 18, 2023, and December 23, 2023, respectively. [ECF 38-1 at ¶ 70; see also ¶71].

- That in an investigative report later sanctioned by the Berkshire Hills Regional School District (the "District"), the investigator identified the Complainant, who had then recanted his allegations in their entirety. [ECF 38-1 at ¶¶ 76-77].

### III. ARGUMENT

#### A. Standard of Review

Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course no later than … 21 days after serving it, or … if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). A court, in turn, is required to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Though "[t]he rule reflects a liberal amendment policy," the First Circuit will defer to a decision by a district court to deny a motion for leave to amend provided an "'adequate reason for the denial is apparent on the record.'" ACA Financial Guaranty Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) (quoting LaRocca v. Borden, Inc., 276 F.3d 22, 32 n. 9 (1st Cir. 2002)). "Grounds for denial include 'undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [and] futility of amendment.'" Id. at 56 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962) (alteration in original)). To evaluate futility, the Court determines if the amended complaint fails to state a claim upon which relief could be granted, which is the same standard used by the Court to evaluate a motion to dismiss under Rule 12(b)(6). See Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

**B.     The GB Defendants Do Not Object to Plaintiff's Removal Of The Claims In Counts IV and V Against the Town.**

At the hearing on the Motions to Dismiss on April 11, 2025, Plaintiff's Counsel acknowledged that the claims against the Town in Count IV and Count V, which are claims for violation of the MCRA and conspiracy, respectively, had intentionally been omitted. As these claims cannot be asserted against the Town, the GB Defendants accept this concession and the claims being dismissed as to the Town.

**C.     Plaintiff Unduly Delayed Bringing This Motion to Amend.**

Plaintiff argues that she delayed filing this Motion to Amend because the claims for Defamation and IIED are subject to the presentment requirements of the Massachusetts Tort Claims Act, M.G.L. c. 258 et seq. ("MTCA"). Preliminarily, the GB Defendants do not concede that proper presentment was made in any way under the MTCA. Regardless, the MTCA provides that "[a] civil action shall not be instituted against *a public employer* on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose…." M.G.L. c. 258, § 4. Further, the MTCA provides "[t]he provisions of sections one to eight, inclusive, shall not apply to … (c) any claim arising out of an intentional tort, including … intentional mental distress … libel, slander…." Id. at § 10. As such, the claims for Defamation and IIED could have been asserted against Chief Storti and Officer O'Brien in the original Complaint or the First Amended Complaint.

Furthermore, all of the alleged facts upon which Plaintiff relies were known to her as of the filing of the Complaint and were present in the Complaint. [ECF 1 at ¶¶ 66-72]. There is no reasonable explanation for omitting these two claims from the Complaint, nor is there any reason for Plaintiff to have delayed filing this motion. Rather, Plaintiff chose to file this Motion to Amend

mere days before the hearing on the Motion to Amend even though, based on her own timeline, she could have done so for months based on her presentment expiration date of November 20, 2024.

The Defendants are prejudiced by this inaction because they have to now address them separately rather than in the Motion to Dismiss. This will only cause unnecessary delay for this matter.

> **D.    Count VII: The Claim For Defamation Against Chief Storti And Officer O'Brien Is Futile.**

In proposed Count VII Plaintiff alleges that "[t]he Defendants knowingly and intentionally published the false allegations against [her] forever connecting her name to false accusations of pedophilia and grooming." [ECF 38-1 at ¶ 124]. More specifically, Plaintiff alleges the following:

- That "[d]espite knowing the allegations were completely false, the GBPD *released* the Criminal Complaint in its unredacted form, making public Ms. Galdós-Shapiro's personal information, including her name, home address, and date of birth." [ECF 38-1 at ¶ 125] (emphasis in original).

- That "Chief Storti and the GBPD put out a press release—no doubt attempting to mitigate the damage to their own reputations—describing the Criminal Complaint, stating that it related to 'concerning illustrations in a *book that was provided to students by a teacher at W.E.B. Dubois Middle School*. The illustration provided by the witness *depicted animated characters performing sexual acts on each other*[.]'" [ECF 38-1 at ¶ 126] (emphasis in original).

- That "Chief Storti, Officer O'Brien and the GBPD concealed the true nature of GBPD's investigation, writing that Officer O'Brien had simply asked Ms. Galdós-Shapiro if the book was in her classroom, and that he told her that he was not there to investigate the subject matter of the books. Chief Storti failed to address Officer O'Brien's detention of Ms. Galdós-Shapiro, interrogation of Ms. Galdós-Shapiro, and warrantless search of her classroom." [ECF 38-1 at ¶ 127] (emphasis in original).

> **1.  Defamation, Generally.**

"Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." Correllas v. Viveiros, 410 Mass. 314, 319 (1991). To establish a defamation claim, a plaintiff must satisfy four elements. First, to be "defamatory," the

statement must "hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community, at least to his discredit in the minds of a considerable and respectable class in the community." Yohe v. Nugent, 321 F.3d 35, 40 (1st Cir. 2003) (quoting Tartaglia v. Townsend, 19 Mass. App. Ct. 693, 696 (1985)) (internal quotation marks omitted); Phelan v. May Dep't. Stores Co., 443 Mass. 52, 56 (2004). Second, to satisfy the "publication" element, "the statement must have been [made] to at least one other individual other than the one defamed." Yohe, 321 F.3d at 40 (citing Brauer v. Globe Newspaper Co., 351 Mass. 53, 56 (1966)); Phelan, 443 Mass. at 56. "Third, where the speech is a matter of public concern, a defamation plaintiff must prove not only that the statements were defamatory, but also that they were false." *Yohe*, 321 F.3d at 40 (citing Dulgarian v. Stone, 420 Mass. 843, 847 (1995)). Fourth, "the plaintiff must show that [s]he suffered special damages and must set forth these damages specifically." Id. (citing Lynch v. Lyons, 303 Mass. 116, 119 (1939)). However, "the imputation of a crime is defamatory per se, requiring no proof of special damages." Phelan, 443 Mass. at 56.

The threshold issue of whether a statement is reasonably susceptible of a defamatory meaning is determined as a matter of law by an examination of the statement in its totality in the context in which it was made. Foley v. Lowell Sun Puhl. Co., 404 Mass. 9, 11 (1989).

Further, to the extent that the plaintiff's claim is actually one for false light defamation or invasion of privacy, Massachusetts courts do not recognize false light claims. ELM Medical Lab, Inc. v. RKO Gen., Inc., 532 N.E.2d 675, 681 (Mass. 1989); Fox Tree v. Harte–Hanks Communications, Inc., 398 Mass. 845, 848-849 (1986).

> (a) The Claim May Only Be Asserted Against Chief Storti and Officer O'Brien In Their Individual Capacity; But Common Law Immunity Makes The Claims Futile.

Claims for libel or slander cannot be brought against a municipality or its employees in their official capacity. See, e.g., M.G.L. c. 258, § 10(c); Nelson v. Salem State Coll., 446 Mass. 525,

537 n.9 (2006) ("[I]ndividual defendants in their official capacities are immune from intentional tort claims....").

Based on the foregoing, the claim for Defamation cannot proceed against Chief Storti or Officer O'Brien in their official capacities. Further, any reference to "GBPD" as issuing a statement cannot be the basis for liability against the Town or these officers. They can only be liable for their own acts.

That said, the Motion to Amend should be denied because the Plaintiff's Second Amended Complaint does not allege any conduct outside of their official capacities. See Isijola v. Grasso, No. 4:23-CV-40156-MRG, 2025 WL 563064, at *7 (D. Mass. Feb. 20, 2025) ("[W]hile the MTCA does not apply to claims of intentional tort against defendants acting in their *individual* capacities, when a complaint fails to allege that those defendants acted *outside* of their official capacities, the Court construes the defendants' actions as occurring purely within their *official* capacities."); Bache v. Town of Boxborough, No. 21-11187-FDS, 2022 WL 392819, at *5 (D. Mass. Feb. 9, 2022) (finding the complaint failed to state a claim of intentional tort against a police officer in his individual capacity because it did not allege he acted outside of his official capacity while enforcing a court order).

Indeed, the Supreme Judicial Court has held that, "[a]t common law, … a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption." Nelson v. Salem State College, 446 Mass. 525, 537 (2006). Here, the allegations do not rise to the level of the conduct needed to negate this immunity. See Nasir v. Town of Foxborough, No. 19-CV-11196-DJC, 2020 WL 1027780, at *9 (D. Mass. Mar. 3, 2020) (Casper, J.) ("Although this Court has held above that the Officers are not entitled to qualified immunity under federal law,

overcoming Massachusetts' common law immunity requires more."). Common law immunity takes "every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare." S. Bost. Betterment Trust Corp. v. Bost. Redev. Auth., 438 Mass. 57, 69 (2002) (quoting Foster from Gloucester, Inc. v. City Council of Gloucester, 10 Mass. App. Ct. 284, 294 (1980)). Allegations that demonstrate that a defendant acted with bad faith or malice may overcome the defendant's claim to common law immunity. See Echavarria v. Roach, No. 16-CV-11118-ADB, 2017 WL 3928270, at *14 (D. Mass. Sept. 7, 2017). "Bad faith has been defined to suggest a 'breach of a known duty through some motive of interest or ill will.'" Brothers v. Towon of Millbury, 2014 WL 4102436, at *11 (D. Mass. 2014) (quoting Spiegel v. Beacon Participations, 297 Mass. 398, 416 (1937)). "Malice means a wrongful act, done intentionally, without just cause or excuse." Id., 2014 WL 4102436, at *11 (quoting McGurk v. Cronenwett, 199 Mass. 398, 416 (1937)).

The GB Defendants assert that "with even the most liberal reading of the alleged facts, the [plaintiff's] generalized and conclusory allegations, without more, do not overcome the presumption that the Officers were acting in good faith in carrying out their official duties." Nasir, No. 19-CV-11196-DJC, 2020 WL 1027780, at *9 (citing Najas Realty, LLC, 821 F. 3d at 145-146 (affirming the dismissal of a tort claim because "conclusory allegations" of bad faith or malice "are not enough" to overcome Massachusetts' common law immunity); Lee v. Quincy Hous. Auth., No. 16-CV-11631-RGS, 2017 WL 402972, at *2 (D. Mass. Jan. 30, 2017) (dismissing tort claims because the plaintiff put forth "no facts to suggest that [the defendant's] actions fell short" of the common law immunity standard).

      (b) <u>The Statements Attributed To Officer O'Brien or Chief Storti Are Not Defamatory</u>.

The *acts* of releasing Officer O'Brien's report, ECF 38-1 at ¶ 125, issuing a press release, <u>id.</u> at ¶ 126, or limiting what is contained in the press release, <u>id.</u> at ¶ 127, do not constitute defamation. Rather, the statements attributed to Officer O'Brien or Chief Storti have to be defamatory, but, as set forth below, they are not defamatory.

With respect to any statements, while the Complainant may very well be a target of a claim for Defamation, there are no allegations in the Complaint that would support this claim against Chief Storti or Officer O'Brien. Indeed, there are no allegations that Officer O'Brien's account of what was alleged by the Complainant is inaccurate or that the press release is defamatory.

      (i)    *Officer O'Brien's Report Is Not Defamatory*.

The police report does not contain any defamatory or false information based on statements attributable to Officer O'Brien or Chief Storti. The only report before the Court is that of Officer O'Brien. The Second Amended Complaint does not allege that Officer O'Brien falsely or incorrectly described the allegations made to him by the Complainant. It also does not allege that Officer O'Brien falsely accounted for his investigations. Rather, Plaintiff seeks to make Officer O'Brien liable for the statements made to him by the Complainant. Given that officers and police departments are required to document certain information relating to complaints and investigations, Officer O'Brien cannot be liable for memorializing the complaint made to him. See, e.g., M.G.L. c. 41, § 98F; see also Great Barrington Policy & Procedure No. Police No. 4.28, Incident Reporting, attached hereto as <u>Exhibit 1</u> (the "Reporting Policy"). As set forth in the Reporting Policy, events such as the one alleged in the Complaint must be reported under state law and the Reporting Policy.

Finally, the Plaintiff *ignores* the fact that Officer O'Brien's report explains that the concerns regarding the teacher's conduct were dispelled.

        (ii)    *The Press Release Is Not Defamatory*.

Similarly, the Second Amended Complaint does not allege that the Chief Storti or Officer O'Brien made any false statements in the press release. The press release is consistent with O'Brien's narrative report. There is nothing in the press release that be characterized as false, especially given the qualifying language that states: "On December 8, 2023 The Great Barrington Police Department received a complaint from a person who witnessed what they perceived to be concerning illustrations in a book that was provided to students by a teacher at W.E.B. Dubois Middle School." [ECF 38-1, Exhibit 9 at 67-68; compare with ECF 38-1, Exhibit 1 at 45 (noting that the book was in the classroom and available on a desk in the classroom]. The Complainant's report to Officer O'Brien was that the book was available in the classroom to students. Further, the description of the photographs is not false, nor is the description of the actions taken after the Complainant's report. This is consistent with the press release, especially given that all facts were disclosed prior to the press release. See, e.g., Dulgarian v. Stone, 420 Mass. 843, 849-851 (1995); Lawless v. Estrella, 99 Mass. App. Ct. 16, 21-22 (2020).

        (c)    The Plaintiff Cannot Show The Defendants Were Negligent In Communicating The Statements.

The "of and concerning" test for defamation requires either (i) that the defendant intended his words to refer to the plaintiff and were understood to refer to him; or (ii) the defendant's words reasonably could be interpreted to refer to the plaintiff *and* the defendant was negligent in communicating them in such a way. See Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 430 (1991). Here, the Plaintiff cannot show that the defendants were negligent in communicating their words. Again, this was a report made for purposes of documenting an investigation into allegations

involving children at a local public school. Setting forth who said what in the report is essential for this process and Plaintiff has not cited to any case law that either defendant was negligent in the words chosen. Compare with Eyal, 411 Mass. at 428-429 ("A false statement that a person has been arrested for criminal involvement in an international cocaine ring falls within the definition of a defamatory statement.").

### 2. Chief Storti and Officer O'Brien Are Protected By A Conditional Privilege.

"Statements made by public officials while performing their official duties are conditionally privileged…. The threat of … suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues." Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 630-631 (2012). "The conditional privilege to publish defamatory material is designed to allow public officials to speak freely on matters of public importance in the exercise of their official duties." Draghetti v. Chmielewski, 416 Mass. 808, 814 (1994). "A qualified or conditional privilege immunizes a defendant from liability unless he or she acted with actual malice, Tosti v. Ayik, 386 Mass. 721, 726 (1982), or unless there is 'unnecessary, unreasonable or excessive publication,' and the plaintiff establishes that the defendant published the defamatory information recklessly." Mulgrew v. City of Taunton, 410 Mass. 631, 634 (1991)

"The actual malice standard requires the [plaintiff] to prove that the statement was made either with knowledge that it was false, or with reckless disregard as to whether it was false." Edwards v. Commonwealth, 477 Mass. 254, 263 (2017). "Reckless disregard requires more than negligence; the plaintiff must prove that the individual making the alleged defamatory statement 'entertained serious doubts as to the truth' of the statement." Edwards, 477 Mass. at 263 (citing Murphy v. Boston Herald, Inc., 449 Mass. 42, 48 & n.8 (2007) (discussing application of actual malice

requirement to defamation action brought by a judge)). Finally, the burden is on the plaintiff to prove by clear and convincing evidence that the defendant made the statement with actual malice. See Edwards, 477 Mass. at 263. It should be noted that Edwards was applied at the Rule 12(b)(6) stage.

"[W]here the official believes the matter to be true … and has not acted with actual malice … or with reckless indifference to the rights of the individual citizen, his conditional privilege is not abused." Vigoda v. Barton, 348 Mass. 478, 485 (1965) (citations omitted); Gildea v. Ellershaw, 363 Mass. 800, 820 (1973) (public official acting in good faith not liable to private party for negligence in making discretionary decision within scope of authority).

(a) The Statements of Chief Storti and Officer O'Brien Are Protected By The Conditional Privilege.

Determining whether a conditional privilege is appropriate requires balancing of "the interest of the defamed person in the protection of his reputation against the interests of the publisher, of third persons[,] and of the public in having the publication take place." Burke v. Town of Walpole, 405 F.3d 66, 94 (1st Cir. 2005) (quoting Restatement (Second) of Torts § 598A (1977)); see also Bruno v. Town of Framingham, No. CIV.A. 08-CV-11403LT, 2009 WL 4062177, at *14 (D. Mass. Nov. 20, 2009).

The statements involved were made by public officials about "matters of public importance during the exercise of [their] official duties." Mulgrew, 410 Mass. at 635. Indeed, these were statements *by* public officials *about* a public official relating to allegations occurring in a public school.[2] See Draghetti, 416 Mass. at 815 (quoting Fleming v. Benzaquin, 390 Mass. 175, 189

---

[2] The Defendants would assert that the officers' memorialization of the Complainant's allegations should not be treated worse than the privilege given to those that report on such incident reports. The Supreme Judicial Court has stated that "[w]hen the police take action on accusations, however, 'every citizen should be able to satisfy himself with his own eyes as to the mode in which [that] public duty is performed.'" Butcher v. Univ. of Massachusetts, 483 Mass.

(1983) ("the weight of authority leans toward classifying police officers as public officials"). Police officers investigate accusations of crimes that may, in many instances, turn out to be untrue or unsupportable. Reports are then written regarding their investigations. To remove the conditional privilege in this context – where the police are writing about what was said to them and how they investigated the allegations – would expose officers to countless actions and negate the incentive for thorough investigations and report writing.

      (b) The Plaintiff Has Failed To Plead Actual Malice.

There are also no allegations that plausibly suggest that either Chief Storti or Officer O'Brien themselves made any statements with knowledge of their falsity or reckless disregard for their truth. See St. Amant v. Thompson, 390 U.S. 727, 731 (1968) (to show reckless disregard as to statement's accuracy, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication"); King v. Globe Newspaper Co., 400 Mass. 705, 720 (1987), cert. denied, 485 U.S. 940 (1988). "Simple negligence, want of sound judgment, or hasty action [alone] will not cause loss of the [conditional] privilege." Dexter's Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass. App. Ct. 217, 223 (1987). Again, the focus should not be on the truth of the allegations reported to them, but the accuracy of the facts they documented in their reports.

---

742, 754 (2019) (quoting Cowley v. Pulsifer, 137 Mass. 392, 394 (1884)). In Butcher, the SJC concluded, in the context of the press, that "a report of this official action is privileged." Id. This was based on premise that the "fair report privilege" was "a safety valve to the common-law rule that a republisher of a defamatory statement was subject to the same liability as the original defamer." Howell v. Enter. Publ'g Co., LLC, 455 Mass. 641, 650-651 (2010). Returning to Butcher, the

While "one private citizen's accusations against another are not privileged simply because they appear in a police record," see Butcher, 483 Mass. at 754, the fairness and accuracy of a report requires only that that the "'factual correctness of the events reported,' and not 'the truth about the events that actually transpired.'" Id. at 757 (quoting Yohe v. Nugent, 321 F.3d 35, 44 (1st Cir. 2003)). "The fairness and accuracy of a report is a matter of law to be determined by a court 'unless there is a basis for divergent views.'" Id. (quoting Howell v. Enterprise Publ. Co., LLC, 455 Mass. 641, 661 (2010)).

(c) The Plaintiff Has Failed to Plead Excessive or Unreasonable Publication.

Plaintiff also has not pleaded any allegations that the publication of O'Brien's report or the press release were somehow excessive or unreasonable. With respect to narrative by Officer O'Brien, he was obligated to create a report of the complaint by the Complainant. See M.G.L. c. 41, § 98F; see also Exhibit 1, Great Barrington Policy & Procedure No. Police No. 4.28, Incident Reporting. Compare with Bruno, 2009 WL 4062177, at *14 ("The undisputed evidence establishes that Merusi made both statements in his official capacity, one in the form of a report to the Commission to which he relays a staff member's description of an 'abusive' interaction with Bruno and the other his own report to members of the Commission of his own interaction with Bruno.").

Further, state law requires the release of information pursuant to the Public Records Law, M.G.L. c. 66 et seq. As such, it is not reasonable to state that responding to the requests for public records is evidence of unnecessary, unreasonable or excessive publication to others. Barrows, 82 Mass. App. Ct. at 631. Moreover, the Plaintiff has not identified a single instance where her name, date of birth or address was published for the world to see.[3]

With respect to the press release, it is merely a reiteration of O'Brien's report and, therefore, protected. See Wynne v. Creigle, 63 Mass. App. Ct. 246, 254 (2005) (acknowledging that a person's statements to a newspaper reiterating her statements made in applying for widow benefits

---

[3] See *Massachusetts Police Apologize After Officer Searched a Middle School for LGBTQ Book*, available at https://www.cnn.com/2023/12/21/us/gender-queer-memoir-middle-school-police-search-reaj/index.html (Dec. 23, 2023); *Someone Complained About A Book In A Great Barrington Classroom. Then The Police Showed Up*, available at https://www.berkshireeagle.com/news/southern_berkshires/great-barrington-book-gender-queer-maia-kobabe-ban-complaint--du-bois-middle-school--police-complaint-censorship/article_816f1020-9b53-11ee-bf7a-d38cf3bac5ee.html; and *Police Response To Book Complaint At Great Barrington School Sparks Debate*, available at https://www.wgbh.org/news/education-news/2023-12-18/police-response-to-book-complaint-at-great-barrington-school-sparks-debate.

had to also be protected as petitioning activity under G.L. c. 231, § 59H, because to find otherwise would effectively nullify the protection afforded to such persons).

Finally, the Plaintiff has not disputed that she placed this matter into the public sphere. [ECF 18 at 4 (The plaintiff's counsel also did not object to the representation that the plaintiff was the first person to publicize this incident.")]. As reported in the Berkshire Eagle in December 2023, it was the Plaintiff who "had written about the incident on social media. She noted her robust experience teaching English and curating books for students." *Someone Complained About A Book In A Great Barrington Classroom. Then The Police Showed Up*.[4]

Because the plaintiff has not alleged any facts that would negate the application of the conditional privilege, the Motion to Amend should be denied. Edwards, 477 Mass. at 263.

### E. Count VI: The Claim For Intentional Infliction Of Emotional Distress Against Chief Storti And Officer O'Brien Is Futile.

IIED occurs where one who, by extreme and outrageous conduct and *without a privilege*, intentionally causes severe emotional distress to another. See Agis v. Howard Johnson Co., 371 Mass. 140, 144 (1976); Howell v. Enter. Publ'g Co., LLC, 455 Mass. 641, 672 (2010) (noting that the plaintiff "must also show that the reporters acted 'without privilege'").

In order to recover for IIED, a plaintiff must establish, among other things, that the defendant's conduct was "extreme and outrageous," "beyond all possible bounds of decency" and "utterly intolerable in a civilized community". See Agis, 371 Mass. at 144-145. Such "outrageousness" has been defined as "a high order of reckless ruthlessness or deliberate malevolence that is simply intolerable." Conway v. Smerling, 37 Mass. App. Ct. 1, 8 (1994). Moreover, Massachusetts cases have adopted such a high standard for proving IIED claims that liability for the tort does not arise

---

[4] Available at https://www.berkshireeagle.com/news/southern_berkshires/great-barrington-book-gender-queer-maia-kobabe-ban-complaint--du-bois-middle-school--police-complaint-censorship/article_816f1020-9b53-11ee-bf7a-d.

even where, "the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Tetrault v. Mahoney, Hawkes and Goldings, 425 Mass. 456, 466 (1997) (citing Foley v. Polaroid Corp., 400 Mass. 82, 99, (1987)).

1. **The MTCA Bars The Claim Against Chief Storti And Officer O'Brien In Their Official Capacity.**

Under the Massachusetts Tort Claims Act, an individual can only be sued for an intentional tort as an individual, as opposed to the individual's official capacity. See M.G.L. c. 258, § 10(c); see also Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 596 (2001); Saxonis v. Lynn, 62 Mass. App. Ct. 916, 918 (2004) (same). Here, there are no allegations that Chief Storti or Officer O'Brien's action occurred outside of their official capacities.

2. **The Plaintiff's Allegations Do Not Support A Claim For IIED.**

Even arrests – which did not occur here – do not amount to claims for IIED. See Sena v. Commonwealth, 417 Mass. 250, 264 (1994) (quoting Agis, 371 Mass. at 145) ("Neither applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered 'utterly intolerable in a civilized community.'"); see also Eason v. Alexis, 824 F.Supp.2d 236, 243 (D. Mass. 2011) ("false arrest, without more, cannot give rise to an IIED claim"); Lund v. Henderson, 22 F.Supp.3d 94, 106 (D. Mass. 2014) (unlawful arrest alone did not constitute extreme and outrageous conduct); Aaron v. City of Lowell, 666 F. Supp. 3d 102, 120 (D. Mass. 2023) (holding that where police officers merely carry out their obligations as law enforcement officials, their conduct as a matter of law cannot be deemed extreme and outrageous). The allegations against Chief Storti or Officer O'Brien do not meet this heightened level of conduct to support a claim for IIED. See Doe v. Bradshaw, 2013 WL 5236110, *13 (D. Mass. 2013) (dismissing claims against

school officials and employees). As this Court wrote in Opalenik v. City of Northampton, 3:24-cv-30068-MGM (D. Mass. March 13, 2025), "[t]his is an intentionally high standard and, as Defendants note, courts have repeatedly held it is not met even in the case of an unlawful arrest. In this case, where Plaintiff acknowledges he was not arrested by officers after the incident, his complaint fails to clear the high threshold necessary to raise an intentional infliction of emotional distress claim." (Internal citations omitted). See, e.g., Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014) ("The standard for making a claim of intentional infliction of emotional distress is very high. Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." (internal citations and quotations omitted)).

Here, engaging in an investigation based on these allegations, documenting the allegations, responding to public records requests and issuing statements such as the ones here do not amount to conduct that can support this claim.

Further, neither Chief Storti nor Officer O'Brien released the narrative with any private information to the public. That was done by another, different employee of the police department, the identity for which the Plaintiff must know if she is alleging the disclosure as a basis for this claim. The Second Amended Complaint, however, does not even allege that Officer O'Brien or Chief Storti released the information. It is unclear why the Plaintiff can assert either of these two individuals would be personally liable for the actions of another person.

Finally, to the extent that this claim is based on the same allegations of defamation, it should also result in the dismissal of this claim. See Correllas, 410 Mass. at 324.

### 3. **Common Law Immunity Bars This Claim.**

For the reasons set forth for the claim of Defamation, common-law immunity also should serve to bar this claim.

## IV. CONCLUSION

For the reasons set forth above, the GB Defendants hereby request that this Honorable Court deny the Motion to Amend, with prejudice.

Respectfully submitted,

The Defendants,
TOWN OF GREAT BARRINGTON,
PAUL E. STORTI, and JOSEPH O'BRIEN

By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ Adam Simms*
Adam Simms, BBO #632617
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
asimms@piercedavis.com

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered** participants on May 13, 2025.

*/s/ Adam Simms*
Adam Simms